**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*



KCB/TBM/RSB
F. #2017R01960

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 20, 2026

<u>By E-mail and ECF</u>

The Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. Howard Rubin et al.
> <u>Criminal Docket No. 25-281 (BMC)</u>

Dear Judge Cogan:

The government respectfully submits this letter, pursuant to the Court's February 9, 2026, Order, to request that the Court designate this case complex pursuant to Title 18, United States Code, Section 3161(h)(7)(A).

I.     <u>Background</u>

The government assumes familiarity with the factual and procedural background of the case. In brief, the defendants are charged in a 16-count Superseding Indictment with charges spanning 2009 to 2024, concerning sex trafficking, in violation of 18 U.S.C. § 1591, Mann Act transportation for prostitution, in violation of 18 U.S.C. § 2421(a), bank fraud, in violation of 18 U.S.C. § 1344, and false tax returns, in violation of 26 U.S.C. § 7206. ECF No. 21. The charges stem from defendants Howard Rubin and Jennifer Powers's operation of an extensive sex-trafficking network, involving at least ten Jane Doe victims and numerous co-conspirators; Rubin's payments of more than $9 million to Jennifer Powers and her husband Stephen Powers in connection with the trafficking network and the cover-up thereof; and the defendants' failure to disclose the nature of their relationships and the existence of Rubin's payments to a bank and the Internal Revenue Service ("IRS"). The evidence includes extensive electronic communications, tax and financial records, flight records, medical records, legal documents, and material from a separate but related civil case in which plaintiffs brought claims against Rubin and Jennifer Powers for, among other things, sex trafficking.

Pursuant to search warrants executed at the time of Rubin and Jennifer Powers's arrests, almost 40 electronic devices were seized, in addition to approximately one dozen storage devices. The raw data for the devices alone exceeds 12 terabytes. Moreover, counsel for the

defendants have furnished the government with more than 50 names and entities in connection with an ongoing privilege review, and are claiming an expansive common interest privilege among the defendants and others.

At the first status conference on October 20, 2025, the government indicated its intent to move for complex case designation. As the Court explained, "[T]here's a lot of discovery that's going to have to be turned over, obviously. It is a multi-defendant case. I'm on the edge of finding it complex now, but I want to give the parties a chance to discuss that, so I will exclude just based on the ends of justice at this point, and when we next meet, the defendants will let me know their position on that." Oct. 20, 2025, Tr. at 7.

At the next status conference on February 9, 2026, the government moved for complex case designation. Rubin's counsel had no objection; Jennifer Powers's counsel requested that the Court again defer decision; and Stephen Powers's counsel objected to the designation. See Feb. 9, 2026, Tr. at 8-10. For the reasons discussed herein, the basis for complex designation are plainly evident on the record before the Court, and thus the Court should designate the case complex. See id. at 10 (Your Honor commenting that "the volume of discovery is enormous" and "the length of time that this spans is another factor that points towards complexity").

II.     Applicable Law

The Speedy Trial Act provides district courts with broad discretion to grant a "continuance on the basis of [its] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The continuance may be made by the court on its "own motion," "at the request of the defendant," at the request of "[the defendant's] counsel," or "at the request of the attorney for the Government." Id. "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases," which the Supreme Court described as "substantive openendedness." Zedner v. United States, 547 U.S. 489, 497 (2006).

The period of a continuance is excludable under the Speedy Trial Act only if the court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A); see also Zedner, 547 U.S. at 507 n.7 (encouraging district court to "put its findings on the record at or near the time when it grants the continuance"). Such findings may not be made retroactively; they must be "set forth in the record of the case" at the time the judge grants the continuance. See, e.g., United States v. Tunnessen, 763 F.2d 74, 77 (2d Cir. 1985) ("[T]he decision to grant an ends-of-justice continuance [must] be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period.").

In determining whether to grant an application for a continuance on this basis, the court must consider, among other factors, the complexity of the case, the reasonable time necessary for effective preparation by counsel, and whether failure to grant a continuance would make the proceeding impossible or result in a miscarriage of justice. See 18 U.S.C. § 3161(h)(7)(B). "Cases are 'complex' where they, for example, involve numerous defendants,

novel legal issues, myriad claims, or many necessary witnesses." United States v. Pikus, 39 F.4th 39, 53 (2d Cir. 2022). Notably, the court need not obtain the defendant's consent for such a continuance, and the defendant's consent is not among the factors the court must consider in weighing whether the ends of justice would be served by granting a continuance. See United States v. Lynch, 726 F.3d 346, 354-56 (2d Cir. 2013).

A district court's "ruling excluding delay under the Speedy Trial Act is reversible only on a showing of abuse of discretion." United States v. Hernandez, 862 F.2d 17, 24 n.3 (2d Cir. 1988) (rejecting, in a footnote, argument that court abused its discretion in finding a 19-defendant case complex); cf. Jones v. United States, 543 F. App'x 67, 70 & n.6 (2d Cir. 2013) (finding case appropriately designated complex "based on the number of defendants, timespan of the charges, number of crimes charged, death eligibility and discovery issues in the case").

III.     Complex Case Designation is Warranted

Multiple factors compel the conclusion that this case should be designated complex.

First, by its very nature, this case is factually complex. It involves interlapping sex trafficking, Mann Act, bank fraud and tax schemes that span 15 years, multiple states and three defendants. The trafficking scheme alone involved numerous Jane Does—ten of which have been named in the Superseding Indictment—in addition to multiple co-conspirators and other witnesses. The interlapping financial schemes were sophisticated and involved, among other things, a marked change in the manner in which Rubin paid Jennifer Powers and Stephen Powers following the filing of civil charges in late 2017, purposefully designed to avoid detection by the relevant authorities. Second, the discovery is extensive, involving, among other things, more than 12 terabytes of electronic data from approximately 40 seized electronic devices and a dozen storage devices. In addition to electronic data, the discovery comprises, among other things, financial and tax records, medical records and legal records—including those collected throughout the course of a separate civil proceeding—much of which detail personally identifiable information of victims and thus must be treated with particular care. Finally, the privilege review creates added complexity. Defense counsel have furnished more than 50 entities and names in connection with an ongoing attorney-client privilege review, and are claiming an expansive common interest privilege among the defendants and others, all of which complicates the government's ongoing review and provision of discovery. Indeed, counsel for one of the defendants provided additional names in connection with the privilege review just this week.

Cases in this District demonstrate that these factors more than suffice to justify complex case designation. See, e.g., United States v. Kaplan, No. 23-CR-392 (JMA), 2024 WL 4476809, at *3-4 (E.D.N.Y. Oct. 11, 2024) (designating as complex two-defendant case, involving 16 counts, dozens of victims, factually complex fraud schemes, and "extensive discovery" of 80 gigabytes to date); United States v. Raniere, No. 18-CR-204 (NGG), 2018 WL 4471632, at *1-2 (E.D.N.Y. Sep. 18, 2018) (same, in case involving six defendants charged in schemes spanning 15 years, discovery to date of 10 to 12 terabytes, and potential privilege issues where the government was provided with an "extensive list of attorneys"). That other cases may involve even more complex facts does not change the complexity of this case. See Kaplan, 2024

WL 4476809, at *3 (noting that the Second Circuit has not set "a floor for what constitutes complexity").

Finally, that Stephen Powers has been charged only with subscribing to false tax returns—in six counts spanning from 2018 through 2024—has no bearing on any of the factors discussed above. The crux of those charges is that Rubin paid Jennifer Powers and Stephen Powers more than $9 million in connection with, and in support of, the sex trafficking network, which money was paid in a manner to obscure its source and purpose, and which money Jennifer Powers and Stephen Powers failed to disclose to the IRS. Any trial on the tax charges will necessarily involve evidence concerning the underlying sex trafficking network, to, among other things, explain the origin of those payments and prove that the defendants willfully hid those payments from the IRS—not only to avoid paying taxes, but also to obscure their involvement in the sordid sex trafficking scheme. Thus, the same considerations concerning factual complexity, discovery and privilege exist as to Stephen Powers as they do his co-defendants. See Feb. 9, 2026, Tr. at 10 (Your Honor commenting, "The fact that Mr. Powers is only here on the tax charges, I'm not convinced that that would allow a trial only as to him . . . that would not necessarily incorporate substantial proof as to the other charges.").

IV.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court designate the case complex.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     _____/s/_____
Kayla Bensing
Tara McGrath
Raffaela Belizaire
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of Court (BMC) (by ECF)
        Counsel of Record (by ECF)