UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HOWARD RUBIN, et al.,<br><br>Defendant. | Case No.: 25-cr-281(BMC) |

**MEMORANDUM OF LAW IN SUPPORT OF HOWARD RUBIN'S MOTION TO REASSIGN THIS CASE TO THE ORIGINAL JUDGE BECAUSE THIS CRIMINAL CASE IS NOT, AND BY RULE CANNOT BE, RELATED TO A PRIOR CIVIL CASE, AND, IN THE ALTERNATIVE, TO DISQUALIFY PURSUANT TO 28 U.S.C. § 455**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

PROCEDURAL HISTORY ..... 4

I. The Civil Case ..... 4

II. The Criminal Case ..... 5

LEGAL STANDARD ..... 7

I. Due Process Requires an Unbiased Tribunal and the Appearance of Justice ..... 7

II. Statutory Recusal: 28 U.S.C. § 455(a) ..... 8

A. § 455(a): Objective Appearance Standard ..... 8

III. This District's Division of Business Rules ..... 9

ARGUMENT ..... 10

I. Criminal Case Was Improperly Related To The Civil Case ..... 10

II. The Government Violated These Rules to Gain an Inappropriate Strategic Advantage ..... 11

III. In the Alternative, Recusal Is Required Because This Court's Public Statements and Rulings Demonstrate an Appearance of Partiality ..... 12

A. The Civil Case and the Formation of Negative Personal Opinions ..... 12

1. The March 19, 2024 Rule 50/59 Order ..... 13

2. The April 8, 2026 Sua Sponte Delay-Damages Award ..... 13

B. The Criminal Case - The April 29 Detention Ruling ..... 14

1. The Court's Detention Ruling Was Based, In Part, On Its Negative Views of Rubin ..... 14

IV. In the Alternative, the Remedy is Recusal Under § 455(a) ..... 16

CONCLUSION ..... 17

## PRELIMINARY STATEMENT

Defendant, Howard Rubin, through his counsel, moves the Court to find: (1) that this criminal case is not, and cannot be, validly related to a prior civil case, (2) that the government filed a baseless related case letter that had the effect of steering this case to the judge who presided over the civil case and who had expressed negative views about the defendant and his character, and (3) in the alternative, that due, at least in part, to this Court's handling of the prior civil case, and as shown by remarks made on the record in both the civil and criminal cases, the appearance of impartiality of this Court might reasonably be questioned such that, most respectfully, this Court should consider disqualification under Title 28, United States Code, § 455.

The defense acknowledges that a year has passed since the Indictment was filed. However, because no motion schedule has been set, there would not be prejudice to the Court or the parties from the relief requested. In addition, as shown below, there is no time limit to a motion under Rule 4(d) of the Eastern District's Division of Business Rules. Accordingly, this request is timely.

This case presents uncommon facts that warrant the uncommon remedies of reassignment or recusal. As an initial matter, this case was assigned to the Honorable Margo K. Brodie. However, on the same date the Indictment was returned, the government filed a sealed *ex parte* letter claiming that this criminal case was related to a prior civil case presided over by a different judge.

The government's letter invoked Rules 3 and 4 of the Division of Business Rules for the Eastern District of New York, but neither authorizes relating a criminal case to a civil one. Rule 1(a) places civil and criminal cases in separate categories; Rule 3 governs only related civil cases; and Rule 4 applies only to criminal "case[s]," defined as proceedings "commenced by indictment or information." Rule 4(a). Because the Rules contain no provision for relating a criminal case to

a civil case, this case was not properly related and should be reassigned to Judge Brodie. Rule 4(d)(1) specifically provides that a defendant may request reassignment "on the ground that [the case] was not properly related."

The District's Division of Business Rules make the government's motivation in filing a related case letter irrelevant. Nonetheless, the government had every reason to seek the same judge that presided over the civil case. Why? Because, as the record shows, the civil trial judge expressed deeply negative personal views about the defendant and his character during the civil proceedings – indeed, the judge stated explicitly that he viewed the facts the same way as the civil plaintiffs, some of whom are purported victims/witnesses in the criminal case. The Court's views of the defendant and the plaintiffs were expressed in public filings which the prosecutors would certainly have seen as they interviewed many of the same witnesses who testified in the civil case and investigated much of the same conduct in the civil case as part of the criminal investigation.

For instance, in its March 19, 2024 order denying Rubin's Rule 50(b) and Rule 59 motions (No. 17-cv-6404 (BMC) ("the Civil Docket"), ECF No. 425) (the "Rule 50/59 Order"), the Court went beyond legal analysis and offered personal commentary on Rubin's character, writing that he "struck me" as "so wrapped up in his own wealth, power, and base desires that he had little regard for the consequences of his actions or his victims' reactions to them," while stating that it viewed the plaintiffs "the same way I did" and that they were "ripe for the taking." (Rule 50/59 Order at 13.) The government read these statements and then filed a related case letter so the same judge would preside over the criminal case. At the April 29, 2026 bail hearing, the Court stated that, "having gotten to know him pretty well," it did not "trust Mr. Rubin" because of his "master-of-the-universe mentality" and because "[h]e thinks he can write the rules" (April 29, 2026, Tr. at

44:20-24), which were views the Court traced to "since I first laid eyes on him back in 2017." (*Id*. at 46:16.)

The Court's remarks reveal far more than a factual finding about credibility. The Court's characterization of Rubin as an arrogant "master" who "thinks he can write the rules," which are views the Court developed while presiding over the civil case. This goes well beyond anything necessary to resolve a bail application. These are statements about who the Court believes Rubin is as a person, not assessments of the evidence before it. A court's commentary on a defendant's character that extends this far beyond the requirements of the proceeding provides insight into the Court's own settled views and leads to the conclusion that the Court cannot be impartial. The Court plainly harbors negative views of the defendant and his mentality from presiding over the civil case. These negative views informed the Court's decision at a bail hearing in this criminal case and may continue to influence rulings going forward. At a minimum, the impartiality of the Court is reasonably called into question, which is all the statute requires.

This case involves among the most draconian statutes in the federal system, carrying fifteen-year mandatory minimum sentences. For the government to file a baseless letter to secure a judge with overtly negative views of the defendant, his mentality and his character in any case, much less one as serious as this one, is unfair. Mr. Rubin should have the same right as every other defendant. He should have his case presided over by a judge selected at random. He deserves a blank slate, and not to be before a Judge who has formed negative views about him from a prior case. This Court should not permit the prosecutors to pick the judge under these circumstances. Rather, this Court should be the unbiased arbiter of fairness that it is in every case, and should not countenance the government's actions in picking the judge, rather than allowing a judge to be selected at random.

## PROCEDURAL HISTORY

### I. The Civil Case

On November 2, 2017, three civil plaintiffs filed a civil complaint against Howard Rubin and Jennifer Powers, alleging RICO, sex trafficking and other causes of action. On November 7, 2017, the civil case was randomly assigned to the Honorable Brian M. Cogan. On February 20, 2018, an amended complaint was filed adding four Plaintiffs to the action. On July 29, 2019, the Court denied defendant's summary judgment motion. In March 2022, the civil matter proceeded to trial. A jury found Rubin, but not Powers, liable for civil damages and awarded $3,850,000 in compensatory and punitive damages. On March 20, 2024, nearly two years after trial, the Court denied Rubin's motion for judgment as a matter of law under Rule 50(b) and for a new trial under Rule 59. In its decision, the Court stated the following: "Rubin admitted in his testimony that he enjoyed abusing women and delivering physical pain" (Rule 50/59 Order at 8.) The Court also stated: "Rubin's modus operandi was not usually to make first contact with his victims himself, but to utilize other women as intermediaries to locate and entice women to come to New York for his adventures. The use of female intermediaries, the jury could find, was a method by which Rubin could build trust with his victims" (*Id*. at 9.) The Court also stated, "How many women have to tell Rubin to stop before he gets the message that when he's bringing them to New York to do the things he's doing, they felt forced into doing those things?" (*Id*. at 6-7.)

In addition, the Court stated,

> Rubin must have known that he had brought or was going to bring electric prods and pool cues into the apartment at the time he solicited these plaintiffs to visit the apartment, and that he intended to use them. It is fully consistent with the jury's verdict to conclude that Rubin wanted to spring the more extreme behavior on them once they were bound and gagged (as if that wasn't extreme enough), and that he so intended at the time he tricked plaintiffs to come to New York for what they thought would be less extreme behavior.

(*Id*. at 5.)

The government would certainly have read these, and other, statements in the Court decisions. The unfairness to Rubin is that the government read the Court's decision in the civil case and then adopted the same rationale as its theory in the criminal case; then, by filing the baseless related case letter, secured that same judge to handle the criminal case.

## II. The Criminal Case

Based on the investigation number assigned to this case (2017R01960), the Eastern District of New York United States Attorney's Office ("EDNY") opened this investigation in 2017, and discovery has shown that this criminal investigation was underway at the time of the Court's Rule 50/59 Order. Because the EDNY investigated Rubin and Powers for the identical conduct alleged in the civil case, the prosecutors would have followed the civil proceedings closely, including reading the Court's summary judgment decision and the Court's decision denying Rubin's motion for a new trial.

The grand jury returned a sealed indictment on September 17, 2025, which was assigned to the Honorable Margo K. Brodie. On that same date, the government submitted a sealed, *ex parte* letter, stating that [redacted][1] (September 17, 2025, Related Case Letter; EDNY_00000145 at 1 (enclosed as Exhibit 1.) However, Rules 3 and 4 do not provide for a criminal case to be related to a prior civil case.

[1] The caption for the civil matter was *Amy Moore, Mia Lytell, Natacha Tagai, Emma Hopper, Brittany Hassen and Brittany Reyes v. Howard Rubin and Jennifer Powers* with the same case number.

Between the commencement of the criminal case and a bail hearing on April 29, 2026, the defense applied repeatedly for release on conditions to various magistrate judges, coordinated discovery and addressed other issues. On April 29, 2026, this Court held a bail hearing. During the hearing, this Court acknowledged that the proposed $75 million bond package was "overwhelming on its face" (April 29, 2026, Tr. at 43:16) that under the proposed conditions, it would be "*physically impossible*" for Rubin to commit "these same crimes with which he's charged here, the sex offenses" (*Id*. at 46:9-12), and that the government's flight-risk theory rested on "speculation" that, "*alone, ... wouldn't be enough for me to find that the government has met its burden.*" (*Id*. at 44:9-15) (emphasis added.) However, the Court went on to say that, in regard to Rubin's alleged conduct, "he's very good at convincing lawyers that it's defensible." (*Id*. at 45:4-5.) Rubin's counsel has reason to be concerned by the Court's statement that Rubin has somehow convinced his lawyers to defend the indefensible. In light of this remark alone, and it is not alone, counsel would be remiss to not bring this application, especially in light of the other factors, including the government's related case letter. The Court further said of Rubin, "[o]nce you start to see the world from a position of I'm the master, I can get people to believe what I want them to believe, then you think you can do anything." (*Id*. at 45:6-8.)

On April 8, 2026, three weeks before the bail hearing in the criminal case, this Court issued a post-mandate order, awarding *sua sponte* $144,581.22 in "damages for delay" against Rubin—on no party's request, on no briefing, citing a Supreme Court case from 1883 (*Omaha Hotel Co. v. Kountze*, 107 U.S. 378 (1883)) about real-property waste that has no application to a money judgment, and in a manner that on its face penalized Rubin for having exercised his appellate rights. (Civil Docket, ECF No. 534.) Rubin moved for reconsideration. (Civil Docket, ECF No. 535.) The Sureties on the supersedeas bond wrote that the issue had not been briefed or argued and

that they were unaware of any culpable post-judgment conduct by Rubin. (Civil Docket, ECF No. 536.) On April 20, 2026, the Court granted reconsideration and amended its order to remove the award. (April 20, 2026, Order.)

## LEGAL STANDARD

### I. Due Process Requires an Unbiased Tribunal and the Appearance of Justice

The Constitution guarantees a criminal defendant the right to proceedings conducted within the bounds of fundamental fairness. *Gayle v. Scully*, 779 F.2d 802, 805 (2d Cir. 1985) (Citing *Taylor v. Hayes*, 418 U.S. 488, 501–02 (1974); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971); *Rochin v. California*, 342 U.S. 165, 173 (1952).) Under the Due Process Clause, "there is a well-developed right, established in a long line of cases, to a trial before an unbiased judge." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 196 (2d Cir. 1982).

This requirement extends beyond the absence of actual bias. Due process "requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). As the Supreme Court has emphasized, "[a] fair trial in a fair tribunal is a basic requirement of due process," and "fairness, of course, requires an absence of actual bias in the trial of cases." *In re Murchison*, 349 U.S. 133, 136 (1955) (emphasis added).

Critically, the law also protects public confidence in the judiciary: "justice must satisfy the appearance of justice." *Proctor v. Warden*, 435 U.S. 559, 560 (1978) (internal citations omitted). The Second Circuit has likewise stressed that "not only must justice be done, it also must appear to be done." *United States v. Eduardo-Franco*, 885 F.2d 1002, 1005 (2d Cir. 1989).

Confidence in the objectivity of the judiciary and the appearance of justice is impossible when the government circumvents the rules to influence judge selection. What makes this case different from a typical recusal request is that the judge was not selected at random. Instead, the government engineered the assignment through a related case letter that the Rules do not authorize. Even without the Court's repeated negative remarks about the defendant, that fact alone is fatal to the objectivity and fairness of this process.

## II. Statutory Recusal: 28 U.S.C. § 455(a)

### A. § 455(a): Objective Appearance Standard

§ 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This inquiry is objective: "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). Its purpose is "the protection of the public's confidence in the impartiality of the judiciary." *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007).

The Second Circuit frames the question as whether "a reasonable person, knowing all the facts, would conclude that the trial judge's impartiality could reasonably be questioned," or whether "an objective, disinterested observer fully informed of the underlying facts" would "entertain significant doubt that justice would be done absent disqualification." *Amico*, 486 F.3d at 775 (internal citations omitted); *see also Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (referencing *Liteky*, 510 U.S. at 548; citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988)).

§ 455(a) is "necessarily fact-driven," and the analysis turns on "an independent examination of the unique facts and circumstances of the particular claim at issue." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (quoting *United States v. Bremers,* 195 F.3d 221, 226 (5th Cir. 1999)). One of the unique facts here is that this situation was created by the government's improper related case letter.

In close cases, the tie goes to recusal: "[I]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of disqualification." *Ligon v. City of N.Y.*, 736 F.3d 118, 124 (2d Cir. 2013) (internal citations omitted), vacated in part on other grounds, 743 F.3d 362 (2d Cir. 2014).

## III. This District's Division of Business Rules

This District has adopted Rules for the Division of Business pursuant to 28 U.S.C. § 137. The relevant iteration is from February 17, 2025. Rule 1(a) establishes three categories of cases: (1) Civil; (2) Criminal; and (3) Miscellaneous. Rule 2(a) provides that "[a]ll criminal, civil and miscellaneous cases shall be randomly assigned by the Clerk as provided in these rules." Rule 4 addresses Related Criminal Cases and defines "case" for its purposes as "a criminal proceeding commenced by indictment or information." Rule 4(a). A "case" does not include wiretap applications, grand jury motions, or *ex parte* criminal motions. The import of Rule 4 is clear: only a criminal case can be related to another criminal case. A civil case falls outside the definition entirely.

Rule 4(b)(1) provides that one criminal case is presumed "related" to another "when the facts of each arise out of the same charged criminal scheme(s), transaction(s), or event(s)." Nothing in Rule 4(b), or in Rule 4 generally, addresses relating a criminal case to a civil case.

Rule 4(c) imposes an "affirmative obligation" on the United States Attorney's Office ("USAO") to notify the Court when one case "may be related to another pursuant to Rule 4(b) above." Because Rule 4(a) limits "case" to criminal proceedings, this obligation arises only when both cases are criminal. Notably, the September 17, 2025 letter incorrectly captioned the civil matter as "United States v. Howard Rubin and Jennifer Powers," a criminal caption that could erroneously suggest both cases are criminal. Rule 4(d) provides that "[e]ither the USAO or any defendant may likewise request that a case previously assigned to a Judge as related be reassigned to the original Judge on the ground that it was not properly related." There is no time limit on such a request.

## ARGUMENT

Rubin makes three related arguments. First, that this criminal case was improperly related to the prior civil case because the District's Division of Business Rules do not provide for a related case letter under these circumstances. Second, that the government violated these Rules specifically so the same Judge who presided over the civil matter would preside over the criminal matter where that Judge repeatedly expressed negative views about the defendant's character and aligned himself with the views of the plaintiffs, several of whom are witnesses in the criminal case. Third, that due, in part, to this Court's handling of the civil case, and as shown by remarks made in both cases, the impartiality of this Court might reasonably be questioned.

### I. Criminal Case Was Improperly Related To The Civil Case

As demonstrated in § III, the Division of Business Rules contain no provision for relating a criminal case to a civil one. This case should have remained with Judge Brodie. Rule 4(d) expressly permits reassignment when a case was not properly related, and no time limit applies. Accordingly, the defendant moves that this case be reassigned to Judge Brodie.

The government's letter invoked "Rules 3 and 4." Neither applies. Rule 3 governs only whether "[a] civil case is 'related' to another civil case." Rule 3(a). The word "criminal" appears nowhere in it. Even on its own terms, Rule 3 presumes that cases are not related "unless each case is still pending," *Id.*, and the Civil Case had been closed since April 2022. Rule 3 also permits relating cases only on a letter motion filed on the docket, after good-faith conferral with all parties, and upon "a determination by a Judge of this court." Rule 3(b). None of that occurred here. Rule 4, in turn, applies only to a "case," defined as "a criminal proceeding commenced by indictment or information." Rule 4(a). And even as to criminal cases, a Rule 4(c) letter "will be interpreted having been submitted only to provide notice to the Court, and not as an application from the USAO seeking reassignment"; "[a]ny request for reassignment must be made pursuant to Rule 4(d)," by "letter motion filed in the affected cases." Rules 4(c)(1), 4(d)(3).

## II. The Government Violated These Rules to Gain an Inappropriate Strategic Advantage

It would have been obvious to the government as of March 2024, 18 months before they returned the Indictment, that the Judge presiding over Rubin's civil case had negative views about Rubin's character, and positive views about the plaintiffs, some of whom would become, and in fact are, witnesses and purported victims in the criminal case. As noted, the Court in the civil matter wrote that Rubin was "so wrapped up in his own wealth, power, and base desires that he had little regard for the consequences of his actions or his victims' reactions to them" (Rule 50/59 Order at 13.) The Court also wrote that the jury "likely saw plaintiffs the same way I did," that they were "ripe for the taking, which was why Rubin was able to exploit them" (*Id.*)

The likely significance to the government's decision to file a meritless related case letter is the fact that the Court expressed its personal views of the defendant and his character, as well as its assessment of the plaintiffs. The Court went beyond ruling on matters of legal sufficiency and evidence by stating its extremely negative assessment of Rubin, including his purported desire for power, base sexual desires, and his lack of regard for women whom the Court stated were victims of his conduct. The Court also indicated it made an assessment of the plaintiffs—some of whom would be witnesses at the criminal trial—that they were "ripe for the taking" and exploited by Rubin. The government could not have been unaware of these observations when it filed a letter invoking Rules 3 and 4, neither of which permits relating a criminal case to a civil one.

Even aside from the Court's statements about Rubin and the plaintiffs, the government knows it will fare better with a judge who already rejected Rubin's motions to set aside sex trafficking allegations, albeit in a civil context. The government would have every reason to hope it would get the same Judge in the criminal case. But the government did not stop at hoping. Rather, it took action by filing a meritless related case letter, one plainly not authorized by the existing Rules, to all but ensure that it would get the same judge.

## III. In the Alternative, Recusal Is Required Because This Court's Public Statements and Rulings Demonstrate an Appearance of Partiality

### A. The Civil Case and the Formation of Negative Personal Opinions

As noted, the Court presided over *Lawson v. Rubin*, No. 17-cv-6404 (E.D.N.Y.) from 2017 through judgment and through post-trial motion practice. The plaintiffs there asserted Trafficking Victims Protection Act and state-law claims (assault, battery, false imprisonment, and intentional infliction of emotional distress) arising from BDSM encounters with Rubin. After a seven-day trial in March 2022, the jury returned a verdict finding Rubin liable to each of the six plaintiffs under the TVPA but "found Rubin not liable for the tortious actions brought by plaintiffs, except for

Moore's single claim of battery in December 2016"—and the jury awarded no damages on that one battery claim. *Moore v. Rubin*, No. 24-2018-cv, slip op. at 32-33 & n.9 (2d Cir. Nov. 21, 2025). The Court denied Rubin's Rule 50(b) and 59 motions, and the Second Circuit affirmed the judgment on November 21, 2025. *Id*. The criminal case followed.

### 1. *The March 19, 2024 Rule 50/59 Order*

When ruling on a motion for a new trial, a Court must review the evidence for legal sufficiency. As a result, the court is required to opine on the quality of the evidence. However, the Court here, most respectfully, went beyond this, and offered commentary on Rubin's character in a general way. The Court had already explained that it did not disbelieve the plaintiffs. Its description of Rubin as someone who "struck me" as "so wrapped up in his own wealth, power, and base desires" was not needed to decide whether the verdict was seriously erroneous (*Id*.) Neither was its remark, in a footnote to Rubin's testimony, that "[m]ore than a couple of jurors' mouths dropped open" (*Id*. at 8 n.4.) These are statements about who the Court believes Rubin is. The Court carried that belief into the April 29 hearing, where it said it had "gotten to know him pretty well" (April 29, 2026, Tr. at 44:20.)

### 2. *The April 8, 2026 Sua Sponte Delay*-Damages Award

As set forth in the Procedural History above, this Court *sua sponte* awarded $144,581.22 in "damages for delay" on no party's request, on no briefing, and citing inapposite authority in a manner that on its face penalized Rubin for exercising his appellate rights. (Civil Docket, ECF No. 534 at 8.) The Sureties confirmed that the issue had never been briefed or argued and that they were "unaware of any culpable post-judgment conduct by Rubin." (Civil Docket, ECF No. 536 at 1.) This Court subsequently vacated the award. (April 20, 2026, Order.) That the Court felt

compelled to impose an unsolicited monetary penalty against Rubin, only to reverse itself, reinforces the pattern of personal animus toward the defendant.

### B. The Criminal Case - The April 29 Detention Ruling

On April 16, 2026, Rubin filed a motion under 18 U.S.C. § 3145(b) to revoke the Magistrate Judge James R. Cho's March 27, 2026 detention order. Rubin proposed an extraordinary bail package and this Court heard argument on the motion on April 29, 2026. The point, of course, is not that the Court ruled against Rubin's detention motion. Indeed, it is historically difficult for defendants to be released when charged with Sex Trafficking due to the statutory presumption of detention. Rather, the point is that the Court punctuated its ruling with personal observations about Rubin from its experience with him in the civil case. The concern is not with the Court's past rulings, but with future ones, especially where this matter is likely to result in a criminal trial on statutes with substantial mandatory minimum sentences. However, the defense reviews the Court's detention decision to demonstrate how the Court's negative views of Rubin from the civil matter colored its ruling on a critical bail issue in the criminal case.

#### 3. *The Court's Detention Ruling Was Based, In Part, On Its Negative Views of Rubin*

This Court began its oral ruling: "The package is obviously overwhelming on its face" (April 29, 2026, Tr. at 43:16.) This Court identified the government's flight-risk theory as resting on two possibilities: (1) "[H]idden assets that the defendant controls," and (2) "third parties who can swoop in and save him" (*Id.* at 46:2-3; *see id.* at 43:17-25). The Court then stated:

> If all we had was unsupported speculation that maybe he's sitting on another $70 million somewhere that he hasn't disclosed or maybe there's an equally well off investment banker friend who's going to just show up with his private plane and get him out of here, if that was it alone, that speculation wouldn't be enough for me to find that the government has met its burden.

(*Id.* at 44:9-15.) The Court also expressed its view that it did not trust Rubin, stating as follows:

> Frankly, having gotten to know him pretty well, I don't trust Mr. Rubin at this moment in time to do any, either of those things and the reason I don't is because he's in this mess because he's got a master-of-the-universe mentality. He thinks he can write the rules.

(*Id.* at 44:20-24.)

On the topic of dangerousness, the Court stated that, if it adopted the proposed conditions, it did not "see [Rubin] … conducting these same crimes with which he's charged here, the sex offenses," because "it would be *physically impossible* . . ." (*Id*. at 46:9-12) (emphasis added.) The Court then stated, "[H]e just can't be controlled by any constraints," (*Id.* At 46:23-25), and that he "writes his own rules in everything," which "means that he is a danger to the community . . . [t]hat's what he's done since I first laid eyes on him back in 2017" (*Id*. at 46:7-9, 15-16).

The Court's negative views of Rubin's character, stemming directly from the civil case in 2017, played a role in the Court concluding he was a danger to the community, and should not be released on restrictive conditions. Had this case been assigned at random, and had the government not filed the meritless related case letter, Rubin's bail application would not have been colored by a Judge's view of Rubin's character from a prior case. Rather, the bail application would have been decided solely on the merits, and without regard to whether the Judge had a negative view of him from a prior civil case when he "first laid eyes on him back in 2017."

A reasonable public observer, reading the April 29 transcript and the larger context, would have substantial and legitimate grounds to doubt that Rubin would receive the "fair trial in a fair tribunal" to which he is constitutionally entitled. *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997); *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977).

## IV. In the Alternative, the Remedy is Recusal Under § 455(a)

The cumulative and unambiguous record demonstrates that, under these particular facts, recusal is warranted. First, that the government filed the meritless related case letter specifically to have the same judge handle both the civil and criminal matter itself erodes the appearance of impartiality. Simply put, the government should not pick the judge. By doing so, especially when the rules do not provide for it, the government has made the proceedings unfair.

Second, as detailed in §§ III.A and III.B above, this Court has repeatedly expressed deeply negative personal views of Rubin and characterized him as someone "so wrapped up in his own wealth, power, and base desires" (Rule 50/59 Order at 13) that he disregards others, stating that it does not "trust" him because of his "master-of-the-universe mentality" (April 29, 2026, Tr. at 44:21-23), and extending that distrust to his lawyers by remarking that "he's very good at convincing lawyers that it's defensible" (*Id*. at 45:4-5). In addition, the Court stated that Rubin "struck the jury the same way he struck me – someone so wrapped up in his own wealth, power, and base desires that he had little regard for the consequences of his actions or his victims' reactions to them" and that the jury "likely saw plaintiffs the same way I did," that they were "ripe for the taking, which was why Rubin was able to exploit them." (Rule 50/59 Order at 13.) Under 28 U.S.C. § 455, a judge must step aside when there exists either actual bias or the objective appearance of partiality. Here, this Court's own words and actions demonstrate that it has prejudged the defendant before any criminal trial has begun. That is the very unfairness § 455 was enacted to prevent; see also *Liteky*, 510 U.S. at 555.

The objective standard under § 455(a) asks whether a reasonable observer, fully apprised of the facts, would "entertain significant doubt that justice would be done absent recusal." *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008); *Amico*, 486 F.3d at 775. The record here is the

Court's repeated negative commentary on Rubin's character, and its reliance on impressions formed during the civil case to decide issues in the criminal case, is more than sufficient to undermine public confidence that justice would be done absent recusal.

No criminal defendant whose liberty is at stake should have to proceed before a judge whose impartiality is in serious doubt, or where the record reflects this degree of negative opinion about them. § 455 and the Constitution demand that the proceedings be transferred to a judge free not just from actual bias, but from any significant appearance of bias.

Accordingly, the only lawful and just remedy is for this Court to reassign the matter to the Judge originally assigned and to, most respectfully, recuse itself.

## CONCLUSION

For the foregoing reasons, Rubin respectfully requests that the Court (1) reassign this case to Judge Brodie under Rule 4(d)(1) of the Division of Business Rules, because it was not properly related to No. 17-cv-6404; or, in the alternative, (2) recuse itself under 28 U.S.C. § 455(a) and direct that the case be randomly reassigned.

Dated: October 2, 2026
New York, NY

Respectfully submitted,

_______________________

Marc Agnifilo
Zach Intrater
Teny R. Geragos
AGNIFILO INTRATER LLP
140 Broadway, Ste. 4530
New York, NY 10005

Michael J. Gilbert
Katherine Anne Boy Skipsey
Julian Klein
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
30 Rockefeller Plaza, 39th Floor
New York, NY 10112

*Attorneys for Defendant Howard Rubin*

cc: Counsel for the government (via ECF and email)