**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RAB:KCB

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 5, 2026

By Email and ECF

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Howard Rubin
Criminal Docket No. 25-281 (S-1) (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in response to defendant Howard Rubin's motion to reassign this case or to disqualify the Court from presiding over it. See ECF No. 140 ("Def. Mot."). Because the defendant's claims are meritless, the Court should deny the motion.

## I. Factual Background

On September 17, 2025, a grand jury sitting in the Eastern District of New York returned a 10-count indictment charging defendants Howard Rubin and Jennifer Powers with sex trafficking, violations of the Mann Act and, as to Rubin, bank fraud. See ECF No. 1. The same day, the government notified the Court, via letter (the "Relation Letter"), pursuant to Rules 3 and 4 of the Rules for the Division of Business for the Eastern District of New York (effective February 17, 2025) (the "Rules for the Division of Business") that the above-captioned criminal matter appeared to be related to Lawson, et al. v. Rubin, et al., No. 17-CV-6404 (BMC) (the "Civil Case"). On September 22, 2025, Chief United States District Judge Margo K. Brodie, to whom the criminal case had been assigned, reassigned the case to this Court. See Sept. 22, 2025 Order. The Court has since presided over this case.

On September 29, 2025, the government produced the Relation Letter to the defendants in discovery. See EDNY_00000145-EDNY_00000147. More than one year later,

and only after being ordered detained pending trial—a decision swiftly affirmed by the Second Circuit—Rubin now moves to disqualify the Court from presiding over his case.

II. The Motion to Reassign is Meritless

First, the defendant lacks standing to object to Chief Judge Brodie's reassignment of this case to this Court under the local rules. The Rules for the Division of Business expressly provide: "These Division of Business Rules are adopted for the internal management of the caseload of the District and shall not be deemed to vest any rights in litigants or their attorneys." See Rules for the Division of Business at 1; see also Rule 5 of the Rules of the Division of Business ("These Rules are adopted for the internal management of the caseload of the Court and shall not be deemed to vest any rights in litigants or their attorneys."). Thus, "these rules are not intended to give the parties a right to litigate where a particular case will be tried, but merely provide the guidelines by which the Eastern District administratively handles and assigns its cases." United States v. Pescatore, No. 05-CR-128 (TCP), 2006 WL 47451, at *6 (E.D.N.Y. Jan. 5, 2006) (collecting cases standing for proposition that defendant does not have right to have case tried before a particular judge or to determine the manner of judge assignment). The motion should be denied on this ground alone. See United States v. Astra Motor Cars, 352 F. Supp. 2d 370 (E.D.N.Y. 2005) (noting defendant objecting to reassignment of criminal case to judge presiding over related civil case had no "rights to make the present motion and the present motion is denied on this ground").

Second, in any event, reassignment was proper under the Rules for the Division of Business. The Rules for the Division of Business expressly provide: "Nothing in these Rules shall be deemed to prevent the reassignment of cases at the initiative of the Chief Judge by agreement of the Judges involved." Rules for the Division of Business 2(e). The Rules go on to provide: "[t]he Chief Judge may, at any time with the consent of the Judges involved, reassign individual cases between Judges . . . at any point, including for trial." Id. That is precisely what happened here, where Chief Judge Brodie reassigned this case to this Court. See Sept. 22, 2025 Order.

Third, reassignment was appropriate here on the merits, given that the civil and criminal cases share a similarity of facts and legal issues and because the cases arise from the same transactions or events, resulting in a substantial saving of judicial resources by having the same judge preside over both cases—thus meeting the standards contemplated by both Rules 3 and 4 of the Rules for the Division of Business. See Rule 3 for the Rules for the Division of Business (finding civil cases related "when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases" to the same judge); Rule 4 for the Rules for the Division of Business (providing a presumption of relatedness between criminal cases "when the facts of each arise out of the same charged criminal scheme(s), transaction(s), or event(s), even if different defendants are involved in each case"). Here, both cases charged the defendants with sex trafficking "for their operation of an extensive trafficking network," both cases allege that the defendants "misrepresented to the women [involved] the manner and degree of physical violence they would endure," both cases cover "the same approximate years-long

period," and certain of the plaintiffs in the Civil Case are victims of charges in the criminal case. Relation Letter at 2.

Fourth, no impropriety occurred by the government in filing the Relation Letter. The defendant argues that the government filed the Relation Letter to obtain some kind of advantage. See generally Def. Mot. The argument is nonsensical.[1] The government notified Chief Judge Brodie, as the assigned district judge, and Your Honor, as the assigned judge presiding over the Civil Case, that the two matters "appear[ed] to be related . . . under both the standards articulated in Rules 3 and 4, notwithstanding that one is a criminal matter and the other a civil matter." Relation Letter at 2. Thus, the government did not improperly invoke either Rule 3 or Rule 4 of the Rules for the Division of Business, but rather notified the Court that though neither rule expressly covered the instant situation, the standards outlined therein applied here. In light of the "significant overlap in the defendants, charges, victims, and evidence, the government respectfully submit[ted] that reassignment would be appropriate, because it would likely result in significant savings of judicial resources and serve the interests of justice." Id. Notably, the defendant does not challenge any of the factual recitations in the Relation Letter: that the charge, defendants, subject matter, time period and many of the victims are the same. Instead, the defendant argues that the government must have "violated these rules to gain an inappropriate strategic advantage," citing no actual evidence other than the existence of public rulings that the Court was required to make under the law. Def. Mot. 11.

Cases—whether civil or criminal—are routinely deemed related where they are based on the same set of factual circumstances. See, e.g., Astra Motor Cars, 352 F. Supp. 2d at 372-73 (rejecting defense argument of impropriety in relating civil and criminal case where the facts and evidence are similar and relation would result in "substantial savings of judicial resources"); Cendant Corp. v. Shelton, No. 3:06-CV-854 (AWT), 2006 WL 8446620, at *1 (D. Conn. Aug. 18, 2006) (rejecting any impropriety between relation of related civil and criminal cases). Because the government was plainly in compliance with the Rules for the Division of Business in notifying the Court that the cases appeared related, the Court should deny the motion.

## III. The Motion to Recuse is Meritless

The defendant next argues that the Court should recuse itself pursuant to 28 U.S.C. § 455(a), which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "[T]he substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." Apple v. Jewish Hosp. & Med. Ctr.,

---

[1] Indeed, the defendant's own arguments are internally illogical. For example, on the one hand, he argues that the government "read the Court's [posttrial] decision in the civil case and then adopted the same rationale as its theory in the criminal case," but then, in the next paragraph, asserts that the government "opened this investigation in 2017," a date, of course, well before the Court's posttrial decision in the Civil Case. See Def. Mot. 5.

829 F.2d 326, 333 (2d Cir. 1987). In other words, the relevant question is whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." United States v. Carlton, 534 F.3d 97, 100 (2d Cir. 2008) (internal quotation marks omitted) (alteration in original).

Recusal "is commonly limited to those circumstances in which the alleged partiality 'stem[s] from an extrajudicial source,'" known as the "extrajudicial source" standard. Carlton, 534 F.3d at 100 (quoting Liteky v. United States, 510 U.S. 540, 544 (1994)) (alteration in original). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555. "Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." Id. at 555-56 (emphasis in original).

The defendant's primary complaint is how the Court ruled when ordering him detained pending trial. The defendant, of course, ignores that two separate magistrate judges over four separate bond hearings, and the Second Circuit, all agreed with the Court's decision to detain Rubin pending trial. The defendant nonetheless argues that the Court somehow improperly relied on information the Court gained while presiding over the Civil Case. See Def. Mot. at 14 (claiming that the Court's ordering Rubin detained was inapposite but "[r]ather, the point is that the Court punctuated its ruling with personal observations abut Rubin from its experience with him in the civil case"). The defendant ignores that the Bail Reform Act requires the Court to consider a defendant's history and characteristics. 18 U.S.C. § 3142(g) (requiring judicial officer to consider "the history and characteristics" of the defendant, including the person's "character" and "past conduct"). And Rubin himself encouraged the Court to consider the Civil Case in making arguments about the strength of the evidence. See, e.g., ECF No. 98 (defense motion appealing magistrate judges' determinations that he should remain in custody). Nonetheless, as the Court made plain, its detention determination was based on Rubin's years of committing violence against women, which Rubin downplayed ("I would call it the BDSM subculture to the 22nd degree removed. There's no culture like this where women end up hurt the way these women were hurt."); Rubin's attempted manipulation of others, including to commit crimes ("[I]n terms of him violating the law, whether it's tax reporting, bribing an MDC officer to get him to a different floor…[he] writes his own rules."); the numerous misrepresentations the defense made during the course of numerous detention hearings ("[T]he way this thing dribbled out, it was like I don't want to say pulling teeth because all it took was the Magistrate Judge denying the bail application, but every time, there was more and there was more and there was more and it wasn't just a little more, it was a lot more"); and the court's assessment of the government's proffer ("The government has really amassed a lot of evidence, no one piece of which is enough to convince me that he's not to be trusted but all of which

collectively is so that's why I'm going to affirm the decision of" the magistrate judge). See Apr. 29, 2026 Tr. of Proc., at 43-46.

The only other arguments the defendant makes in support of a showing of some kind of bias is a ruling made in the Civil Case that—as the defendant describes it—has since been vacated upon reconsideration, and the Court's posttrial ruling in the Civil Case. As to the former, the defendant does not explain how an order vacated upon reconsideration somehow gives rise to any kind of bias. And as to the Court's posttrial ruling in the Civil Case, the language complained of by the defendant as going "beyond" what was "required to opine on the quality of the evidence" was, in fact, simply a ruling on arguments made by Rubin. Def. Mot. 13. For example, the defense complains that the Court opined that the defendant "struck [the Court] [as] someone so wrapped up in his own wealth, power, and base desires that he had little regard for the consequences of his actions or his victims' reactions to them." See Def. Mot. 13 (citing Civil Case, ECF No. 425, at 13). But the Court made this statement in ruling on the defendant's motion for a new trial pursuant to Fed. R. Civ. P. 59, which requires a trial judge to "weigh the evidence himself." Manley v. AmBase Corp., 337 F.3d 237, 244-45 (2d Cir. 2003). The Court did just that.

"A motion for recusal requires a showing of personal bias," which ordinarily cannot be found from "conduct which arises in a judicial context." Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1141 (2d Cir. 1994). The defendant's arguments that the Court's required rulings in the cases pending before it somehow have given rise to some kind of bias, or even the appearance of bias, are meritless, and the disqualification motion should be denied.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Kayla Bensing
Tara McGrath
Raffaela S. Belizaire
Nina Gupta
Assistant U.S. Attorneys
(718) 254-7000